# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### COLUMBIA DIVISION

Leroy A. Matthews, Jr.,   #261232,   )
            )
      Petitioner,   )   Civil Action No. 3:12-619-DCN-JRM
            )
v.   )
            )   **REPORT AND RECOMMENDATION**
Warden of Broad River Correctional )
Institution,   )
            )
      Respondent.   )
_____)

   Petitioner, Leroy A. Matthews ("Matthews"), is an inmate with the South Carolina Department of Corrections serving sentences of twenty-five years for trafficking in crack cocaine and six months concurrent for resisting arrest.[1] He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 29, 2012.[2] Respondent filed a return and motion for summary judgment on June 29, 2012. Because Matthews is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on July 2, 2012 explaining to him his responsibility to respond to the motion for summary judgment. Matthews filed his response on August 31, 2012.

---

  [1]Matthews was also convicted of improper backing and disorderly conduct and was sentenced to time served for those offenses.

  [2]Filing date under Houston v. Lack, 487 U.S. 266 (1988).

## **Background and Procedural History**

Matthews was convicted by a jury on August 9, 2005 in Anderson County.  He was represented by Duanne D. White, Esquire. His conviction was affirmed by the South Carolina Court of Appeals which summarized the facts in the case as follows:

> On the morning of January 18, 2005, Deputy Andrew Hyslop witnessed Matthews backing down a street at a high rate of speed.  Deputy Hyslop believed Matthews was backing in a dangerous manner and decided to pull him over to give him a verbal warning.  In the meantime, Matthews parked his car in a private parking lot.  Matthews exited his vehicle as Deputy Hyslop was parking next to him.
>
> Deputy Hyslop asked Matthews for his driver's license.  Matthews responded by running into a nearby home and locked the door.  Shortly thereafter, Matthews came out through the front door.  Deputy Hyslop approached Matthews and asked to see his driving license.  Matthews became loud and boisterous with Deputy Hyslop and used profanities while speaking with him. The commotion attracted a small crowd of bystanders, and at least one bystander joined Matthews in yelling obscenities at Deputy Hyslop.  In response to the situation, Deputy Hyslop arrested Matthews for public disorderly conduct.  Matthews flailed his arms and attempted to get away while Deputy Hyslop was trying to handcuff him.  Deputy Hyslop, with the help of a second deputy, was able to handcuff Matthews.  Deputy Hyslop seized $890.00 in cash and a set of keys from Matthews.
>
> Deputy Hyslop placed Matthews in his patrol car and informed him of his <u>Miranda</u> rights.  Matthews told Deputy Hyslop to get out of his face.  Deputy Hyslop closed the door and walked away from the patrol car.  A few moments later, Deputy Hyslop went back to the car and asked Matthews if he had placed anything in the house. However, Matthews did not want to talk with Deputy Hyslop. Deputy Hyslop closed the door and again walked away from the patrol car.  Shortly thereafter, Sergeant Hamby arrived on the scene.
>
> When Matthews saw Sergeant Hamby, he called him over the patrol car. Matthews complaint to Sergeant Hamby about being harassed by the officers on the scene.  Sergeant Hamby asked Matthews if he had left anything in the house when he was inside.  Matthews said he had and offered to take Sergeant Hamby in the house and show it to him.  Matthews took Sergeant Hamby into the house and pointed out a hole in one of the walls which contained a plastic bag with a rock substance in it.  The substance was later tested and found to be crack cocaine.  Pursuant to an inventory search, $2,000.00 cash and an electric scale with crack cocaine residue was seized from Matthews' car.

On April 19, 2005, Matthews was indicted for resisting arrest, public disorderly conduct, trafficking cocaine, trafficking cocaine within one-half mile of a school, and improper backing. The trial court dismissed the trafficking cocaine within one-half mile of a school charge. On April 18, 2005, a jury found Matthews guilty of all the remaining charged crimes. Matthews was sentenced to twenty-five years for trafficking with the sentences for the other crimes running concurrent to the sentence for trafficking. This appeal follows.

State v. Matthews, Unpubl.Op.No. 2006-UP-364 (S.C.Ct.App., filed Oct. 24, 2006). In the appeal filed by Mr. White, the following issues were raised which were rejected by the Court of Appeals:

1. Did the trial court err in failing to suppress the appellant's statements because of the state's Rule 5 discovery violation?

2. Did the trial court err in failing to suppress the appellant's statements because of the state's Miranda violation?

3. Did the trial court err in failing to suppress the search of the house because the appellant's consent was not voluntary?

4. Did the trial court err in admitting the actual drug laboratory report because the written report was hearsay?

5. Did the trial court err in admitting evidence of the defendant's exercise of this right to remain silent?

Matthews petition for a rehearing was denied, and he did not seek further review by the South Carolina Supreme Court. The Court of Appeals returned the Remittitur on March 14, 2007.

Matthews filed a *pro se* application for post-conviction relief ("PCR") on March 19, 2007. An evidentiary hearing was held on October 21, 2008. Matthews was represented by Hugh W. Welborn, Esquire. (App. 429). The PCR court issued an order of dismissal on October 2, 2009. (App. 476). An appeal by way of a Johnson[3] petition for writ of certiorari was filed by the South Carolina Commission on Indigent Defense raising the following issues:

---

[3]Johnson v. State, 364 S.E.2d 201 (S.C. 1988).

3

1.  Did the PCR court err in failing to find trial counsel ineffective for not requesting a continuance to revamp her defense strategy which was destroyed when the arresting officer testified that he had <u>Mirandized</u>[4] petitioner at the time of arrest which fact was unknown to trial counsel because the state had not disclosed this in discovery?

2.  Did the PCR court err in failing to find trial counsel ineffective for not renewing her objection to the admission of the drugs during the trial when she had made a pretrial motion to suppress the drugs which precluded the appellate court from reviewing the issue?

Pursuant to state procedure, Matthews filed a *pro se* brief captioned "45-Day Brief of Appellant for Writ of Certiorari" which raised the following issues:

| | |
|---|---|
| Question One: | Did the South Carolina Court of Appeals error in ruling there was no prejudiced shown by the State's Rule 5 violation? |
| Question Two: | Did the Court of Appeals error in ruling there was no Miranda violation in this case? |
| Question Three: | Did the Court of Appeals error in their ruling in regard to the Laboratory Report? |
| Question Four: | Did the trial court error in failing to suppress the search of the house and vehicle? |
| Question Five: | Was there reversible error when the prosecutor commented on Appellant's exercise of his right to remain silent? |
| Question Six: | Was the traffic stop pursuant to probable cause and lawful? |
| Question Seven: | Was trial counsel ineffective for failing to object or take exception to the |

---

[4]*See* <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

4

prosecutor's being the sole witness before the grand jury?

Question Eight:    Was trial counsel ineffective in failing to consult with Appellant in regard to a ten year plea offered by the State?

Question Nine:    Was trial and appellate counsel ineffective?

Question Ten:    Did the PCR Court error in ruling counsel was not ineffective[?]

The petition for writ of certiorari was denied on May 13, 2011. The Remittitur was returned by the South Carolina Supreme Court on June 1, 2011.

## **Grounds for Relief**

In the body of the present petition, Matthews states four grounds for relief. In a "Memorandum of Law In Support of Petition," Matthews restates those four grounds and adds six additional grounds. The Memorandum attached to the petition is a revised version of the 45-Day Brief of Appellant for Writ of Certiorari filed in the South Carolina Supreme Court. The grounds in both are identical.

Question One:    Did the South Carolina Court of Appeals error in ruling there was no prejudiced shown by the State's Rule 5 violation?

Question Two:    Did the Court of Appeals error in ruling there was no Miranda violation in this case?

Question Three:    Did the Court of Appeals error in their ruling in regard to the Laboratory Report?

Question Four:       Did the trial court error in failing to
                     suppress the search of the house and
                     vehicle?

Question Five:       Was there reversible error when the
                     prosecutor commented on Appellant's
                     exercise of his right to remain silent?

Question Six:        Was the traffic stop pursuant to
                     probable cause and lawful?

Question Seven:      Was trial counsel ineffective for failing
                     to object or take exception to the
                     prosecutor's being the sole witness
                     before the grand jury?

Question Eight:      Was trial counsel ineffective in failing
                     to consult with Appellant in regard to a
                     ten year plea offered by the State?

Question Nine:       Was trial and appellate counsel
                     ineffective?

Question Ten:        Did the PCR Court error in ruling
                     counsel was not ineffective[?]

**Discussion**

**A. Procedural Bar**

Respondent asserts that all of Matthews' claims are procedurally barred because he failed to

properly exhaust them in the South Carolina courts.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to

require a habeas petitioner to first submit his claims for relief to the state courts.  The two theories

rely on the same rationale.  The general rule is that a petitioner must present his claim to the highest

state court with authority to decide the issue before the federal court will consider the claim.

6

1.    Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)    An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)    A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

7

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 203(b)(1)(B); Blakeley v. Rabon, 221 S.E.2d 767 (S.C. 1976). The second avenue is by filing an application for post-conviction relief. *See* S.C. Code Ann. § 17-27-10 *et seq.* A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. A PCR applicant is also required to state all of his grounds for relief in his application. *See* S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 215 S.E.2d 883 (S.C. 1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 653 S.E.2d 266 (S.C. 2007). In Bostic v. Stevenson, 589 F.3d 160, 162-65 (4th Cir. 2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in Marlar, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e). Therefore, for matters in which the PCR court ruled prior to Marlar (i.e.,

8

November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[5] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See Rose v. Lundy, supra.

2.    Procedural Bypass[6]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before

---

[5]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[6]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

> Although the federal courts have the power to consider claims despite a state procedural bar,
>
> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice resulting from the alleged constitutional violation."

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with

state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.     Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); *cert*. *denied*, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750; Gray v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. at 488. A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor

11

which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier, 477 U.S. at 488-490; Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *id.*, or his sentence. Matthews v. Evatt, 105 F.3d at 916.

5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

The grounds for relief in the present petition are the identical grounds raised by Matthews in his *pro se* brief filed in the South Carolina Court of Appeals.[7] Despite this fact, Respondent argues that Matthews failed to properly exhaust his remedies because he did not seek review by the South Carolina Supreme Court after his petition for writ of certiorari was denied by the Court of Appeals. (Respondent's Mem., p. 9).

After an application for PCR is denied by the Court of Common Pleas, a prisoner may seek appellate review (and as discussed above, must do so to properly exhaust his claims) by filing a petition for writ of certiorari in the South Carolina Supreme Court. In many instance, as was the case with Matthews' petition for writ of certiorari, the Supreme Court will transfer the petition to the South Carolina Court of Appeals for resolution pursuant to SCACR 243(l). If the petition is transferred to the Court of Appeals, resolution in that court is the final step that the prisoner must take in order to fully exhaust his state remedies before filing a § 2254 petition in this Court. Further review by the South Carolina Supreme Court pursuant to SCACR 242[8] is unnecessary to fully exhaust his state remedies. *See* McFadden v. Warden, No. 5:12–1486-TLW-KDW, 2012 WL 6135660, at *3, n. 1 (D.S.C. Oct. 9, 2012); Barbaris v. Taylor, No. 4:11–1114-CMC-TER, 2011 WL

---

[7]"45-Day Brief of Appellant for Writ of Certiorari."

[8]Formerly SCACR 226.

3511040, at *3, n. 1 (D.S.C. July 11, 2011);  Stanley v. Beckwith, No. 1:11–607-JMC-SVH, 2011

WL 7561511, at *2, n. 1 (D.S.C. May 27, 2011) (all citing State v. McKennedy, 348 S.C. 270, 559

S.E.2d 850, 854 (S.C. 2002)); In re Exhaustion of State Remedies in Criminal and Post-Conviction

Relief Cases, 471 S.E.2d 454 (S.C. 1990).

 However, Respondent argues that two of Matthews' grounds are procedurally barred for a

different reason, i.e., Ground four (trial court failure to suppress the search of the house and vehicle)

and Ground five (reversible error when solicitor impermissibly commented on Matthews' right to

remain silent). South Carolina has a contemporaneous objection rule. See Pike v. South Carolina

Dep't of Transportation, 506 S.E.2d 516, 521 (S.C. 1998) ("For an issue to be preserved for appeal,

it must have been raised to and ruled upon by the trial court."). It is clear that Matthews did not raise

a contemporaneous objection in the trial court and that such a failure may provide an independent

and adequate basis for state procedural default.  Furr v. State of South Carolina, No. C/A 9:01-0108-

24BG, 2002 WL 31996016 (D.S.C. Mar. 28, 2002).

 The issue is whether the South Carolina Court of Appeals clearly and expressly found that

the claim was defaulted. "[T]he mere fact that a federal claimant failed to abide by a state procedural

rule does not, in and of itself, prevent this Court from reaching the federal claim: [T]he state court

must actually have relied on the procedural bar as an independent basis for its disposition of the

case." Harris v. Reed, 489 U.S. 255, 261-262 (1989). In making this determination a federal court

should examine the text of the state court opinion and the circumstances surrounding the state court's

order. Wilson v. Moore, 178 F.3d 266, 273-274 (4th Cir.1999).

 A review of the record shows that the South Carolina Court of Appeals found that these issues

were procedurally barred by failure to follow state procedural rules.  With respect to search of the

house, the Court of Appeals found that no objection was made when the fruits of the search were introduced into evidence. Further, the Court of Appeals found that no objection was made when evidence showing Matthews exercised his right to remain silent was also introduced. In both instances, the Court of Appeals found that the issues were not preserved for appellate review and did not consider the issues on their merits.

The procedural bar relied on by the South Carolina Court of Appeals must be honored by this Court. Therefore, these grounds will not be further discussed herein.

### B. Non-Cognizable Grounds

Respondent argues that Ground one (alleged violation of state discovery rules) and Ground three (admission of a laboratory report into evidence) are not cognizable because these grounds do not involve a question of constitutional law.

Matthews' petition is brought pursuant to 28 U.S.C. § 2254 which states that federal courts may "entertain an application for a writ of habeas corpus...only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. Grounds one and three in the present petition were argued in state court as matters of state law and procedure. Matthews did not raise constitutional issues with respect to these grounds in state court, and makes no constitution argument in his present petition. Therefore, the undersigned concludes that these grounds are not cognizable for habeas relief.

### C. Remaining Grounds

Since Matthews filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert.*

*denied,* 521 U.S. 371 (1998); <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 405-407.  Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

16

1.    <u>Miranda</u>

Matthews asserts that his Fifth Amendment right to remain silent was violated under <u>Miranda</u>.  The record reflects, and the Circuit Court found after a hearing, that Matthews was read his <u>Miranda</u>[9] rights by an officer who Matthews told to "get out of my face."  Later, Matthews called a different officer over and initiated a conversation with him which led to a search of the house Matthews had entered and a seizure of a quantity of crack cocaine.

The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself." In <u>Miranda</u>, the Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive. <u>Miranda</u>, 384 U.S. at 458. In order to ensure the Fifth Amendment privilege against self-incrimination is not undermined in such a situation, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. *See id.* at 444. Specifically, <u>Miranda</u> requires that prior to any questioning in such a setting, the person being interrogated must be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. *See id.* "The Court's fundamental aim in designing the <u>Miranda</u> warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.'" <u>Colorado v. Spring</u>, 479 U.S. 564, 572 (1987) (quoting <u>Miranda</u>, 384 U.S. at 469). The Supreme Court has held that "<u>Miranda</u> announced a constitutional rule that Congress may not supersede legislatively." <u>Dickerson v. United States</u>, 530 U.S. 428, 444 (2000). Following the rule of *stare decisis*, the Court further

---

[9]In Ground one discussed above, Matthews argued that the State violated discovery rules because there was no mention of the <u>Miranda</u> warning in the police reports.

declined to overrule the <u>Miranda</u> decision, which "has become embedded in routine police practice to the point where the warnings have become part of our national culture." *Id.* at 433.

To ensure that law enforcement officials comply with <u>Miranda</u>'s requirements, the Supreme Court established an exclusionary rule, holding that statements obtained in violation of <u>Miranda</u> must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment. <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985). The failure to administer <u>Miranda</u> warnings creates an irrebuttable presumption of compulsion, requiring the suppression of the accused's statements for purposes of the prosecution's case-in-chief. *Id.* at 306-07 and n. 1.

A suspect may waive his <u>Miranda</u> rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation, "provided the waiver is made voluntarily, knowingly and intelligently." <u>Miranda</u>, 384 U.S. at 444; *see also* <u>Spring</u>, 479 U.S. at 572; <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). In such a case, the suspect's statements are not "compelled" within the meaning of the Fifth Amendment and may be introduced against him in the prosecution's case-in-chief without implicating constitutional concerns. *See* <u>Spring</u>, 479 U.S. at 573. The question whether an accused has validly waived his <u>Miranda</u> rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran</u>, 475 U.S. at 421; *see also* <u>Spring</u>, 479 U.S. at 573. "Only if the 'totality of the circumstances surrounding the interrogation,'" including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the

requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." Moran, 475 U.S. at 421 (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)); *see also* North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In determining whether a valid waiver has been made, the Court need not inquire into the state of mind of the police, which is "irrelevant to the question of the intelligence and voluntariness of the [suspect's] election to abandon his rights." *See* Moran, 475 U.S. at 423. In addition, the "Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege," such as that he may be questioned and his statements used against him in a different criminal investigation. Spring, 479 U.S. at 574. Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Moran, 475 U .S. at 422. As long as a suspect's voluntary decision to speak to law enforcement officials is made with full awareness and comprehension of all the information Miranda requires the police to convey - i.e., that he has the constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation, and that whatever he chooses to say in response to police questioning may be used as evidence against him-his waiver is knowing and intelligent within the meaning of Miranda. *See* Spring, 479 U.S. at 574-75; *see also* Moran, 475 U.S. at 422-24.

On federal habeas corpus review of petitioner's state conviction, petitioner has the burden of proving that he did not competently and intelligently waive his constitutional rights. Johnson, 304 U.S. at 468-69 (involving waiver of right to assistance of counsel). Although the ultimate determination of a valid Miranda waiver is a mixed question of law and fact not subject to the

presumption of correctness, <u>Boggs v. Bair</u>, 892 F.2d 1193, 1199 (4th Cir. 1989), *citing* <u>Miller v. Fenton</u>, 474 U.S. 104 (1985), the state court's factual findings supporting its waiver determination are presumed correct under 28 U.S.C. § 2254(e)(1).  Moreover, in this federal habeas corpus proceeding, the state court's disposition of petitioner's <u>Miranda</u> claim will not be overturned unless it (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or (2) was based on an unreasonable determination of the facts in light of the record evidence. 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 402-03.

The South Carolina Court of Appeals reviewed the record and, applying <u>Miranda</u> and its progeny, found no Fifth Amendment violation.  Specifically, the court found that Matthews' statement for the officer to get out of his face was not an unequivocal invocation of the right to remain silent.  Further, the court found that Matthews later initiated contact with a different officer which led to the officer and Matthews going into the house and recovering the drugs.

The undersigned concludes that the state court decision was not contrary to, or an unreasonable application of, the <u>Miranda</u> rule.

      2.   <u>Traffic Stop</u>

According to the facts summarized by the Court of Appeals, an officer observed Matthews backing down a street at a high rate of speed and decided to stop him.  Before that could happen, Matthews parked and was exiting his vehicle when the officer arrived.  The officer asked Matthews for his driver's license and Matthews fled into a house.

20

At trial, Matthews argued that there was no probable cause for the officer to initiate a traffic stop. Matthews was indicted for improper backing in violation of S.C.Code Ann. § 56-5-3810.[10] The trial judge concluded that the issue was a question of fact for the jury. (App. 151-152). Matthews was convicted of the improper backing charge.

An arresting officer must have probable cause to believe that the person arrested committed an offense. Probable cause exists if "at the moment the facts and circumstances within [the arresting officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

In the present case the officer witnessed Matthews backing down a street at an accelerated speed, and decided to stop him. Matthews was charged and the jury found him guilty beyond a reasonable doubt. The jury's finding vitiates Matthews' argument that the officer lacked probable cause to arrest him on the traffic charge. Consequently, Matthews is not entitled to relief on this ground.

---

[10]The statute provides:

Limitations on backing.

(a) No driver shall back a vehicle unless such movement can be made with safety and without interfering with other traffic.

(b) No driver shall back a vehicle upon any shoulder or roadway of any controlled-access highway.

3.    Ineffective Assistance of Counsel

Matthews asserts that his trial counsel and appellate counsel were constitutionally deficient.

a.  Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  Strickland requires that:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . .[t]he

> court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance.

<u>Strickland</u> at 690, 694. (emphasis added).

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test.  *See* <u>Williams v. Taylor</u>, 529 U.S. 362, 363 (2000)("<u>Strickland</u> test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims....").

In Ground nine, Matthews asserts several areas of ineffective assistance of trial counsel. These issues were addressed by the PCR court and raised on appeal.  Matthews argues that (1) counsel was ineffective for failing to request a continuance after the trial court denied his suppression motion based on <u>Miranda</u>; (2) counsel failed to renew the objection to the admission of the drugs during trial; and (3) counsel failed to object to the Solicitor's closing argument.

During the *in camera* hearing, counsel objected to the admission of Matthews' statements based on a perceived Rule 5 violation (*see* discussion above).  The trial judge ruled there was no discovery violation.  Matthews contends that counsel should have sought a continuance because trial strategy was based on obtaining suppression.  During the PCR hearing, counsel conceded that she should have moved for a continuance.  The PCR court found that even if there was error, Matthews failed to show any prejudice because he "failed to present any relevant or exculpatory evidence, affidavits, or witnesses as to what counsel would have discovered if she would have had more time to prepare." (App. 484).

Likewise, counsel conceded that she should have renewed the objection to the introduction of the drugs during trial. However, the PCR court again concluded that Matthews had not shown prejudice because the drugs would have been admitted based on the trial court's earlier ruling and "the suppression of drug evidence argument would not have been a meritorious direct appeal issue." (App. 492).

During closing argument the Solicitor summarized the officer's testimony about Miranda and that Matthews refused to speak to that officer. (App. 303). The PCR court ruled that there was no error since Matthews ultimately initiated a conversation with a different officer. The PCR court differentiated Doyle v. Ohio, 426 U.S. 610 (1976), because there the defendant effectively invoked his right to remain silent which the prosecutor commented upon during summation.

With respect to these three claims of ineffective assistance of trial counsel, Matthews has not shown that the PCR court's analysis was contrary to, or an unreasonable application of the Strickland test.

Matthews also argues that his trial counsel was ineffective for failing to object to the Solicitor being the only witness to appear before the Grand Jury (Ground seven) and for failing to consult with him with respect to a ten year plea offer by the State (Ground eight). The first and only time these issues were presented in state court was in Matthews' *pro se* brief filed in connection with the Johnson petition. Respondent argues that since these issues were not developed in state court, they are procedurally barred. Matthews appears to concede that the issues are barred, but appears to attempt to rely on Martinez v. Ryan, __ U.S. __, 132 S.Ct. 1309 (2012) because he received ineffective assistance of counsel during the PCR hearing. (Roseboro response, p. 2).

24

Martinez established a limited exception to the rule that the absence of counsel, or ineffective assistance of counsel, would not qualify as cause to excuse a default as to ineffective assistance of counsel claims. *See* Coleman, *supra*.  Under Martinez, a petitioner can show cause for procedural default in his state PCR proceeding if (1) the State requires the prisoner to raise ineffective assistance of counsel claims in the collateral proceeding instead of direct appeal; (2) the State fails to appoint counsel for the collateral proceeding, or that appointed counsel is ineffective; and (3) the underlying ineffective assistance claim has "some merit." Martinez, 132 S.Ct. at 1318.

Insofar as Matthews relies on Martinez, his claims fail.  He has not shown that there is any merit to either Ground seven or Ground eight.  There is no evidence in the record to support these grounds.  The indictment lists the Grand Jury witness as one of the police officers, not the solicitor. Also there is no evidence to indicate that a plea offer was tendered by the State.

### b.  Ineffective Assistance of Appellate Counsel

The right to effective assistance of counsel extends to direct appeal. Pennsylvania v. Finley, 481 U.S. 551, 559 (1987).

Matthews asserted that counsel on direct appeal was ineffective for failing to argue that a Miranda violation occurred.  This issue was thoroughly discussed and rejected by the PCR court. As discussed above, the trial court correctly ruled that there was no violation of Miranda.  Matthews has not shown that it was error to not include this issue on appeal.  Further, he has not shown that the state court determinations were contrary to, or an unreasonable application of, the Strickland test.

## Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

 

 

 

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

February 19, 2013

**The parties are referred to the Notice Page attached hereto.**

26

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).